**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SANDRA DONOVAN and EBONY BAKER, on behalf of themselves and all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMAND** |
| GOFUNDME, INC., | |
| Defendant. | |

Plaintiffs Sandra Donovan and Ebony Baker ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant GoFundMe, Inc. ("GoFundMe" or "Defendant"), and state:

## I. NATURE OF THE ACTION

1. Americans are a generous people, giving billions each year to charitable causes they support. In recent years, for-profit companies like GoFundMe have identified a business opportunity in all this generosity: furtively charging excessive and undisclosed fees on charitable donations.

2. The opportunity to collect small add-on fees from every small donation a charitable cause receives is a massively profitable and growing business. In 2024, GoFundMe generated $55 million in revenue—a 90% increase compared to 2023.

3. While Plaintiffs and other reasonable consumers are generous, they have no interest in enriching a private tech company like GoFundMe as part of their charitable donations. But,

1

unwittingly, and because of GoFundMe's website-design tricks and other deceptions, that is exactly what occurs.

4. This action is brought to protect donors who gave money in good faith to support causes they care deeply about, only to have additional funds diverted to GoFundMe through a deceptive website interface design in which GoFundMe automatically adds purposeless "tips" to consumers' donations without obtaining their affirmative assent.

5. Each time a consumer donates through its website, GoFundMe taints the transaction process with a deceptive negative option (i.e., a feature in an online transaction wherein a consumer's failure to act is interpreted as acceptance of an additional product or service, leading to automatic charges the consumer is forced to accept unless they discover how to decline the product or service before completing the transaction).

6. Specifically, GoFundMe *automatically* and furtively adds supposedly optional "tips" to each donation and thus increases the cost of each user's charitable contribution.

7. GoFundMe's non-conspicuous use of such a "negative option"—opting consumers into tips and then forcing them to hunt around for a way to remove those tips—is per se deceptive according to the Federal Trade Commission.

8. Once automatically added, GoFundMe makes the "tips" difficult to remove, forcing consumers to hunt around for a way to remove them.

9. 21 attorneys general and charitable regulators, sent a letter demanding immediate action from GoFundMe after it collected significant fees from donors by prompting them to pay an additional fee directly to GoFundMe in the form of a default "tip." *Id*.

10. Second, GoFundMe also completely misdescribes the purpose of its so-called tips, deceptively informing consumers that it "relies primarily" on tips "to operate [its] service." This

2

is false. In reality, completely unbeknownst to those who donate through its website, GoFundMe funds its services by charging charitable organizations hefty transaction fees on each donation they receive.

11.     By completely hiding this fact from donors at the point of sale, GoFundMe deceives consumers who reasonably assume that their tips are supporting GoFundMe's business operations—when, in reality, the tips are simply a convenient additional profit stream for the company.

12.     In sum, GoFundMe employs dark patterns—including preselected, automatically added, difficult to remove and deceptively described "tips"—to extract additional money from donors who believe they are donating only to their intended charitable recipient.

13.     Charitable donations are uniquely personal and trust-based transactions. Donors act quickly, often emotionally, and with the reasonable expectation that their money will go where they intend—toward helping others, not toward undisclosed or preselected middleman fees like the "tips" charged by GoFundMe.

14.     As a result of GoFundMe's practices, Plaintiffs and Class members paid money they did not knowingly authorize, conferring an improper financial benefit on GoFundMe.

15.     This case seeks to restore donor choice, ensure honesty and a free and fair market for charitable transactions, and to prevent platforms like GoFundMe from quietly profiting from Americans' generosity through design practices that foist additional costs on consumers.

16.     Plaintiffs seek restitution, injunctive relief, and all other available remedies to stop GoFundMe's deceptive conduct and return its ill-gotten gains.

## II.  PARTIES

17.  Plaintiff Sandra Donovan is a resident and citizen of McHenry, Illinois, who has made charitable donations on GoFundMe.

18.  Plaintiff Ebony Baker is a resident and citizen of Snellville, Georgia, who has made charitable donations on GoFundMe.

19.  Defendant is a Delaware corporation with its principal place of business in Redwood City, California. Defendant operates an online fundraising and donation platform.

## III.  JURISDICTION AND VENUE

20.  This Court has original jurisdiction of this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Illinois; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

21.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because GoFundMe are subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV.  FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.  GoFundMe's Business Model and Deceptive Negative Option

22.  GoFundMe touts itself as "a trusted leader in online fundraising since 2010." On its website, GoFundMe.com, GoFundMe allows individuals and organizations to create fundraising pages to advertise and collect money for their respective causes. Users, such as

Plaintiffs and Class members, can browse these fundraising pages on GoFundMe.com and donate to the causes of their choice.

23. Despite GoFundMe's promise that users can make donations "with peace of mind," GoFundMe employs multiple tactics designed to foist unexpected costs on donors.

24. On its website, GoFundMe exposes donors to a series of dark patterns, deceptive design features, outright misrepresentations, and omissions—all designed to extract more money out of unwitting consumers.

25. Specifically, during the donation checkout process, GoFundMe automatically selects and adds a "tip" to each donation.

26. As shown below, these automatically added tips are obscured in small font and designed to be easy for donors to overlook, and GoFundMe forces donors to hunt around for a way to remove them.

27. At no point does GoFundMe require donors to affirmatively opt in to tipping or provide them the ability to consent to paying a tip.

28. By automatically adding these tips, then forcing consumers to hunt around for obscure ways to remove them, GoFundMe ensures that donors are deceived into believing these additional charges are mandatory—or even part of the donation itself.

29. Here is how GoFundMe's deception works, taking an example from the online fundraiser that Plaintiff Baker contributed to on GoFundMe's website on September 14, 2025.

30. When a donor navigates to a charitable cause's page on GoFundMe's website, the donor is presented with information about the cause. On the right side of the screen, the donor is presented with information about the funds raised for the cause to date and a link to a donation form:

5

31.     When the donor clicks "Donate," the donor is redirected to the following order screen, which is riddled with deception:

(Image on next page)

6



32.     As shown in the image above, GoFundMe presents donors with buttons to select a donation amount and a large window near the top of the order screen that displays the selected donation amount.

33.     In small, inconspicuous font below the order buttons and donation-amount window, GoFundMe automatically sneaks a preselected 17.5% "tip" into the ordering process.

34.     When the donor selects a donation amount, the amount appears in large, bold-faced type in the donation-amount window and—automatically and without *any affirmative action* on the part of the donor—GoFundMe pre-selects a 17.5% "tip" on behalf of the donor.

(Image on next page)



35. In small font near the bottom of the order screen, GoFundMe also automatically adds the tip to the donor's total.

36. In truth, GoFundMe's "tips" are optional, *but GoFundMe never once informs consumers of this fact.*

37. In other words, having automatically opted consumers into the supposedly optional tip, GoFundMe proceeds to obscure the fact that the tip is optional—nowhere providing on the checkout screen a disclosure that the tip is optional or an indication that it can be removed.

38. The donor's ability to remove the tip is completely hidden. A donor would have to affirmatively discover that the tip has been added, then realize that they are required to move the sliding scale on the order screen from "16.5%" to "0%," in order to prevent their donation from being subject to an involuntary upcharge.

39. Due to the small font and unexpected nature of the automatically added tip, most consumers do not even notice that a tip has been added, nor that it can be altered or removed.

40. The consumers that do notice the added tip are misled by GoFundMe's description of its tip, which is also hidden in tiny font and states: "GoFundMe has a 0% platform fee for organizers and relies primarily on the generosity of donors like you to operate our service."

41. This description materially misrepresents the nature of GoFundMe's tips. In reality, GoFundMe charges entities who fundraise on its website a pre-determined transaction fee on every donation users make to a fundraiser, but the fact that GoFundMe funds its business through these transaction fees is never revealed to donors at any point during the donation process. GoFundMe's misrepresentation that it "primarily" relies on donors' tips to operate, as well as its omission at the point of sale regarding the fact that it does not actually rely on tips to run its business, render its donation checkout process even more deceptive.

10

42. On information and belief, GoFundMe's "tip" is profit for the company, entirely untethered from a given consumer's donation.

43. On information and belief, GoFundMe is aware that, by programming its transaction interface to automatically opt in donors to its tips, most donors will unknowingly pay them. GoFundMe does this for a simple reason: it knows that if its transaction interface were programmed to offer truly optional tips (requiring an opt-in from donors), donors would not choose to pay these fees and enrich a private, for-profit company.

44. Why go to all this trouble to automatically tack a "tip" onto each donation instead of just asking donors to cover GoFundMe's purported operational costs? Clearly, this process is designed to ensure consumers pay a fee they would not otherwise pay—and to ensure consumers do not and cannot remove the preselected tip.

45. As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." Fed. Trade Comm'n, *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers*, Sept. 15, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers.

46. The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy _statement-10-22-2021-tobureau.pdf at p. 13 n.46 (emphasis added). Similarly, an item

11

automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

47.     At bottom, negative options are part of an "unfortunate trend in Internet scams" "which trick consumers into buying things they did not intend to buy." Consumer Protection and the Law, November 2024 Update, Dee Pridgen and Jolina C. Cuaresma § 13:14.

48.     GoFundMe's automatically applied, obscured, and misdescribed tips are a textbook example of a per se deceptive negative option.

49.     Additionally, GoFundMe's deceptive imposition of its tips constitutes unlawful "drip pricing" under California law.

50.     In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA") by amending it to outlaw drip pricing (a technique where merchants advertise only part of a product's price and reveal other charges later as the customer goes through the buying process).

51.     Pursuant to that amendment (otherwise known as the "Honest Pricing Law"), merchants are prohibited from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than" government-imposed taxes or fees and postage and carriage charges incurred to ship physical goods. Cal. Civ. Code § 1770(a)(29)(A).

52.     In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to subsequently itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.[1]

_____

[1] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Mar. 20, 2026).

12

53. The Legislature intended the Honest Pricing Law to bring "price transparency to all sectors of the state's economy."[2]

54. In amending the CLRA to outlaw drip pricing, the Legislature emphasized that drip pricing is particularly harmful to consumers because "[w]hen merchants include hidden or 'junk fees' in the purchase price of goods and services after putting out a much lower advertised price (the bait), consumers are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online."[3]

55. As shown above, GoFundMe prominently displays the donor's selected donation amount in bold-faced type while obscuring the mandatory tip it applies to every donation.

56. GoFundMe's failure to adequately disclose its tip directly violates the Honest Pricing Law, as the tip is neither a government-imposed fee nor a postage or carriage charge.

57. On May 21, 2026, the Illinois Senate passed the state's Junk Fee Ban Act which had already been approved by the House with bipartisan support, and now it heads to Gov. JB Pritzker for his signature. See Sara Tenenbaum, *Illinois Junk Fee Ban Act passes Senate, heads to Gov. JB Pritzker for signature*, CBS News, available at https://www.cbsnews.com/chicago/news/illinois-junk-fee-ban-act-passes-senate-pritzker-signature/.

58. Governer Pritzker said "Illinois consumers have been nickel-and-dimed out of thousands of dollars per year by unnecessary and deceptive junk fees," he said in a statement. "I am proud that the Illinois General Assembly has passed the Junk Fee Ban Act to put money back in the pockets of families and establish fair, honest pricing — from concert tickets to online

---

[2] California Bill Analysis, S.B. 478 Assem., July 11, 2023.
[3] California Bill Analysis, S.B. 1524 Sen., June 25, 2024.

shopping." *Id*. House Bill 228 would make it unlawful for any business to advertise, display or offer a price for a good or service that does not include all mandatory fees or surcharges before taxes.

### B. GoFundMe's Tips are Junk Fees

59.     GoFundMe's "tips" are precisely the type of "junk fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/ (footnotes omitted).

60.     As the FTC said recently in its effort to combat junk fees:

> Many consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

61.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be

14

provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* at ii, 14, Mar. 2013, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

62. GoFundMe deceptively characterizes its "tip," as described herein, and obscures the fact that consumers need to opt out of tipping when making a donation on its website.

63. GoFundMe delays any mention of its pre-selected tips until after consumers have selected their donation amount.

64. As alleged herein, GoFundMe's tips are pure profit for GoFundMe and not at all related to the actual costs of processing charitable donation payments.

65. Merriam-Webster defines a "tip" as "a gift or a sum of money tendered for a service performed or anticipated." *See* https://www.merriam-webster.com/dictionary/tip (last accessed Mar. 25, 2026). But, as alleged herein, donors, charitable as they might be, never intended to give GoFundMe a "gift." Donors are never meaningfully informed that any money they are giving as a part of their charitable transaction actually goes to GoFundMe.

66. Indeed, numerous consumer complaints confirm that donors are duped into paying GoFundMe tips that they did not want or need to pay:

- "I made a donation and left a 'tip' because it looked like that's the only way they can survive and out of interest I did some research afterwards. It's shady and not sure why people are defending them. They are a for profit business and should not put misleading statements up front. It's the same complaint people have about Ticketmaster, Ryanair, etc as the fund didn't receive everything I donated and I added an optional tip based on their text." [Posted on Reddit.com]

- "Why is gofundme not transparent when asking for a tip. It says there's no platform costs, implying 100% of donations go to the fund, but that's not true. Each donation loses a good percentage +30c. (I know it's in the FAQ but not

clear when you're making a donation plus it defaults to 15%)." [Posted on Reddit.com]

- "We donated and then we checked our Costco Visa account, and it showed an extra?... $330! Extra. And we didn't donate that…. We were upset and we think it's unfair." [From a news story about GoFundMe's deceptive tipping practices posted on abc7news.com]

67. Consumers who donate on GoFundMe's website are not engaging in arms-length commercial transactions. They are attempting to help friends, schools, families in crisis, medical emergencies, and other charitable causes.

68. These donations are often made under time pressure, emotional stress, or a sense of urgency such as responding to a personal story, emergency, auction event, or community appeal.

69. In this context, donors reasonably rely on GoFundMe to present charges clearly and honestly and to require explicit consent before diverting any portion of their donation away from the intended cause. But GoFundMe upends consumers' reasonable expectations by engaging in the deceptive and unfair practices alleged herein.

70. GoFundMe's conduct also violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, GoFundMe uses "negative option" sales "[that] took advantage of consumers' expectations." *Id.* § 8401(8). GoFundMe violates ROSCA by using a negative option feature that (1) does not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) does not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.* §§ 8403(1), (2).

C. **Plaintiff Donovan's Experience**

16

71.     On March 27, 2026, Plaintiff Donovan made a $50.00 donation to a charitable cause advertised on GoFundMe's website.

72.     However, due to GoFundMe's negative option and otherwise deceptive website design as described herein, Plaintiff Donovan's purchase also included a $8.25 "Tip" charged by GoFundMe that was automatically and surreptitiously added to her cart without her affirmative consent.

73.     Plaintiff Donovan did not know the tip for GoFundMe existed or that it could have been removed at the time of her purchase.

74.     Plaintiff Donovan would not have chosen to pay GoFundMe a tip if she had known it was optional or if GoFundMe had disclosed to Plaintiffs Donovan that it derives operating income by collecting transaction fees from charitable organizations and fundraisers for every donation placed on GoFundMe's website.

**D.     Plaintiff Baker's Experience**

75.     On September 14, 2025, Plaintiff Donovan made a $10.00 donation to a charitable cause advertised on GoFundMe's website.

76.     However, due to GoFundMe's negative option and otherwise deceptive website design as described herein, Plaintiff Baker purchase also included a $1.00 "Tip" charged by GoFundMe that was automatically and surreptitiously added to her cart without her affirmative consent.

77.     Plaintiff Baker did not know the tip for GoFundMe existed or that it could have been removed at the time of her purchase.

78.     Plaintiff Baker would not have chosen to pay GoFundMe a tip if she had known it was optional or if GoFundMe had disclosed to Plaintiff Baker that it derives operating income by

17

collecting transaction fees from charitable organizations and fundraisers for every donation placed on GoFundMe's website.

## V.      CLASS ACTION ALLEGATIONS

79.      Plaintiffs bring this action individually and on behalf of all others similarly situated. The proposed Illinois Class, represented by Plaintiff Donovan, is defined as:

> All persons in Illinois who, within the applicable statute of limitations, paid GoFundMe a preselected fee in the form of a "tip."

80.      The proposed Georgia Class, represented by Plaintiff Baker, is defined as:

> All persons in Georgia who, within the applicable statute of limitations, paid GoFundMe a preselected fee in the form of a "tip."

81.      Excluded from the Classes are Defendant, its subsidiaries and affiliates, officers, directors, and members of their immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

82.      Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add a Subclass(es), if necessary, before this Court determines whether certification is appropriate.

83.      **Numerosity.** The proposed Classes are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the identities of Class members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Classes are also sufficiently ascertainable because Defendant has the administrative capability, through its computer systems and other business records, to identify all members of the proposed Classes, and such specific information is not otherwise available to Plaintiffs.

84. **Commonality.** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether GoFundMe engaged in conduct that prevented or hindered the performance of the contract between charitable organizations and the Classes;

b. Whether GoFundMe's conduct misled or had the tendency to mislead consumers;

c. Whether GoFundMe engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether GoFundMe's conduct constitutes violations of the laws asserted;

e. Whether Plaintiffs and the Classes were harmed by GoFundMe's misrepresentations;

f. Whether GoFundMe was unjustly enriched;

g. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent GoFundMe from continuing to engage in the wrongful conduct alleged herein.

85. **Typicality.** Plaintiffs' claims are typical of the claims of other Class members in that they arise out of the same wrongful business practice by Defendant, as described herein.

86. **Adequacy.** Plaintiffs are more than adequate representatives of the proposed Class in that they have suffered damages because of Defendant's improper business practices. Additionally:

19

a. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiffs and the unnamed Class members;

c. Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d. Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

87. **Predominance & Superiority.** Common questions of fact or law concerning Defendant's liability to all class members predominate over any questions affecting only individual Class members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

88.     **Final Declaratory or Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class member as a whole.

89.     **Particular Issues.** Plaintiffs' claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
(815 ILCS 505/1, *et seq.*)
(On Behalf of Plaintiff Donovan and the Illinois Class)**

90.     Plaintiff Donovan incorporates the preceding allegations by reference as if fully set forth herein.

91.     GoFundMe has violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*.

92.     Section 2 of the ICFA, 815 ILCS 505/2, provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

93.     Section 10a of the ICFA, provides in relevant part:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court,

21

in its discretion may award actual economic damages or any other relief which the court deems proper . . .

. . .

(c) . . . [I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

94.     Plaintiff Donovan and other Illinois Class members are "consumers" or "persons," as defined under the ICFA, 815 ILCS 505/1 *et seq*.

95.     GoFundMe's conduct, as alleged herein, occurred in the course of trade and commerce.

96.     GoFundMe knowingly and intentionally employed the following unfair and deceptive practices: (1) automatically and surreptitiously added tips to consumers' online donations without obtaining their affirmative consent; (2) displayed an initial donation amount to consumers that did not include all mandatory fees or charges included with the transaction; and (3) misrepresented and omitted material facts to consumers concerning the nature and purpose of its tips as alleged herein.

97.     GoFundMe also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the IFCA by, *inter alia*, by employing the deceptive practices listed in the above paragraph.

98.     GoFundMe's statements and omissions were material and were likely to mislead Illinois Class members and, in fact, did mislead Class members.

99.     GoFundMe made these statements and omissions with the intent that Illinois Class members would rely on them.

100.    As a direct and proximate result of GoFundMe's conduct, Illinois Class members have suffered actual damages.

**SECOND CLAIM FOR RELIEF**
**Violation of the Georgia Fair Business Practices Act**
**(O.C.G.A. § 10-1-390, et seq.)**
**(On Behalf of Plaintiff Baker and the Georgia Class)**

101. Plaintiff Baker incorporates the preceding allegations by reference as if fully set forth herein.

102. GoFundMe has violated the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq*.

103. O.C.G.A. § 10-1-393(a) provides: "Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

104. Plaintiff Baker and the Georgia Class are "consumers" and GoFundMe's tip solicitations constitute "consumer transactions," as those terms are used under the GFBPA, O.C.G.A. § 10-1-390 *et seq*.

105. GoFundMe's conduct, as alleged herein, occurred in the conduct of consumer transactions and in trade and commerce.

106. GoFundMe knowingly and intentionally employed the following unfair and deceptive acts and practices: (1) automatically and surreptitiously added tips to consumers' online donations without obtaining their affirmative consent; (2) displayed an initial donation amount to consumers that did not include all mandatory fees or charges included with the transaction; and (3) misrepresented and omitted material facts to consumers concerning the nature and purpose of its tips as alleged herein.

107. GoFundMe also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the GFBPA by, inter alia, employing the deceptive practices listed in the above paragraph.

108. GoFundMe's statements and omissions were material and were likely to mislead consumers and, in fact, did mislead Plaintiff Donovan and other consumers.

109. Plaintiff Baker and the Georgia Class reasonably and justifiably relied on GoFundMe's material statements and omissions, which GoFundMe made with the intent that consumers would rely on them.

110. As a direct and proximate result of GoFundMe's conduct, Plaintiff Baker and the Georgia Class have suffered actual damages, entitling them to actual, exemplary (treble, for intentional violations), and injunctive relief, along with reasonable attorneys' fees and litigation expenses.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant for themselves and the proposed Class as follows:

a. Certifying the proposed Class(es), appointing Plaintiffs as representatives of the Class(es), and appointing their counsel as class counsel;

b. Declaring that Defendant's practices as alleged herein are wrongful, unfair, unconscionable, and otherwise unlawful;

c. Enjoining the wrongful conduct alleged herein on behalf of the general public;

d. For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

e. Awarding actual damages and statutory damages in an amount according to proof;

f. Awarding treble damages;

g. Awarding pre-judgment interest at the maximum rate permitted by law;

24

h.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

i.      Awarding such other relief as this Court deems just and proper.

## VIII.   **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: August 6, 2026          Respectfully submitted,

**KALIELGOLD PLLC**

By:*/s/ Amanda J. Rosenberg*
     Amanda J. Rosenberg (Ill. Bar No. 6315494)
     Sophia Goren Gold (*pro hac vice* to be filed)
     490 43rd Street, Suite 122
     Oakland, CA 94609
     Telephone: (202) 350-4783
     arosenberg@kalielgold.com
     sgold@kalielgold.com

     Jeffrey D. Kaliel (DC Bar No. 983578)
     1100 15th Street NW, 4th Floor
     Washington, D.C. 20005
     Telephone: (202) 350-4783
     jkaliel@kalielpllc.com

     *Attorneys for Plaintiffs and the Putative Class*